UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT PEREZ SCOTT,

      Petitioner,

                               Case No. 2:12-CV-10172
v.                             Honorable Patrick J. Duggan

CARMEN PALMER,

      Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Robert Perez Scott, a state prisoner presently confined at the Michigan Reformatory in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his application, filed by attorney David R. Cripps, Petitioner challenges his conviction – secured by way of a guilty plea – for assault with intent to commit murder pursuant to Michigan Compiled Laws § 750.83.  For the reasons stated herein, the petition for writ of habeas corpus is denied**.**

## I.      BACKGROUND

Petitioner was charged as a second habitual offender with two counts of assault with intent to commit murder and one count of assault with intent to commit great bodily harm for driving his vehicle toward a group of people and hitting two other pedestrians outside of Anita's Bar in Marine City, Michigan on October 11, 2008.  A jury trial began in the St. Clair County Circuit Court on February 3, 2009.  Following two days of

testimony in which thirteen witnesses testified for the prosecution, the prosecution rested its case. (2/4/2009 Tr. at 35.)

Although defense counsel was prepared to continue the trial and present evidence on Petitioner's self-defense defense, defense counsel informed the trial judge at the close of the prosecution's case-in-chief that a plea deal had been reached between the parties. The assistant prosecutor indicated that the plea agreement called for the three original assault counts and the habitual offender charge to be dismissed, in exchange for which petitioner would plead guilty to an added count four, which charged petitioner with one count of assault with intent to commit murder against two victims. The judge advised petitioner that the offense of assault with intent to murder was a felony which carried a maximum sentence of up to life in prison. The judge advised petitioner of the trial rights that he would relinquish by pleading guilty. (*Id.* at 36-40.)

As for the possibility of changing his mind after pleading guilty, the judge informed petitioner:

> Once your plea is accepted, should you have a change of heart or change your mind between now and sentencing, that will not give you the opportunity or the right to withdraw your plea. Once I accept the plea today and you do it voluntarily, your plea would become final and you understand that?

(*Id.* at 40.) Petitioner acknowledged that he understood this. (*Id.*) Petitioner then informed the judge that he wished to plead guilty. In response to the judge's questions, petitioner denied that he had been threatened or coerced into pleading guilty or that any promises had been made beyond the terms of the plea agreement that had been stated in open court. (*Id.* at 41.) Petitioner made out a factual basis for the crime, by admitting, in

response to questions from the prosecutor, that he got into his car and intentionally hit two people with the intent to kill them. (*Id.* at 42-43.) Upon completing the plea colloquy, the trial court found that the plea was voluntary, that Petitioner understood the rights he was waiving by pleading, and that the factual basis admitted by Petitioner was sufficient to establish his guilt for the offense of conviction. (*Id.* at 43.)

Prior to sentencing, petitioner filed a motion to withdraw his guilty plea, which was argued at the time of sentencing. Defense counsel informed the judge that the motion to withdraw was filed against his advice. Counsel nonetheless argued that it was in the interest of justice to allow petitioner to withdraw his plea because a witness, Mr. Fahey, had come forward who would corroborate what Petitioner had planned on testifying to at trial. Mr. Fahey said that another witness, Tara Erick, would also support Petitioner's proposed defense. (3/9/2009 Tr. at 3-5.)

The judge denied Petitioner's motion to withdraw the guilty plea. The judge first noted that he had informed Petitioner at the guilty plea hearing that once his plea had been accepted that he would not be able to subsequently withdraw his plea if he had a change of heart. The judge further observed that Petitioner specifically answered "yes" when asked if he had intended to kill the two victims when he hit them with his car. With respect to Mr. Fahey, the new witness, the judge indicated that this witness could not have offered any testimony with respect to Petitioner's intent. The judge also noted that Mr. Fahey could have been impeached with two prior theft related felony convictions had he testified and that even if the police and prosecutor had not been willing to speak with Mr. Fahey, that there was nothing preventing this witness from contacting Petitioner, who

3

he knew and who was out on bail before trial.  The judge lastly noted that Mr. Fahey's proposed testimony would have been contrary to the testimony from all of the other witnesses who had testified that Petitioner drove his car out of the proper lane of travel and struck the victims.  (*Id.* at 9-11.)

The judge proceeded to sentencing.  Defense counsel noted that although there had been no *Cobbs* agreement,[1] however, he asked the judge to impose a sentence at the low end of the guidelines because the prosecutor had agreed not to oppose a sentence at the low end of the guidelines range.  The prosecutor and defense counsel originally believed that the low end of the guidelines was one hundred and thirty two months but it turned out to be one hundred and twenty six months.  Defense counsel asked the judge not to exceed one hundred and thirty two months on the minimum sentence.  (*Id.* at 11-12.)[2]

When asked if he had anything to state on his behalf, Petitioner claimed that he was not guilty and that all he had done was to try to save himself and keep himself safe.  The judge replied: "well, that's not what you told me when the jury was going on."  Petitioner then indicated that he was scared and that he only had five minutes to decide

---

[1]  *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), the Michigan Supreme Court authorized a judge to preliminarily indicate the appropriate length of sentence, but if the defendant subsequently pleads guilty and the judge determines that the sentence must exceed the preliminary evaluation, the defendant has an absolute right to withdraw the plea. *See* M.C.R. 6.310(B)(2)(b); *Wright v. Lafler*, 247 F. App'x 701, 703 n.1 (6th Cir. 2007).

[2]  Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7; 666 N.W.2d 231, 236 n.7 (2003) (citing Mich. Comp. Laws § 769.34(2)).  The maximum sentence is not determined by the trial judge but is set by law.  *See People v. Claypool,* 470 Mich. 715, 730 n.14; 684 N.W. 2d 278, 286 n.14 (2004) (citing Mich. Comp. Laws § 769.8).

whether to plead guilty and that he could either get eleven years and see his kids one more time or get thirty years [if convicted after a trial]. The judge indicated that he had heard the testimony at the trial, particularly evidence that Petitioner had hid his car after the incident and had taken the license plate off of the back and put something over the dashboard to conceal the vehicle identification number (VIN). The judge sentenced Petitioner to twelve to twenty five years. Petitioner objected to the sentence, claiming that he had been told that he would get a minimum sentence of one hundred and thirty two months and no more than twenty five years. The trial judge said: "I am telling you what your sentence is. That's your sentence. Thank you." (*Id.* at 13-16.)

Petitioner's appellate counsel filed a second motion to withdraw his guilty plea listing three grounds for why such relief was appropriate. However, the only pertinent basis claimed by Petitioner's appellate counsel in the instant action is the position of counsel that Petitioner should have been permitted to withdraw his guilty plea based on the ineffective assistance of trial counsel. The judge ordered that a *Ginther*[3] hearing be conducted on Petitioner's claim that counsel had given deficient advice to Petitioner to get him to plead guilty. *People v. Scott*, No. 08-002970-FH (St. Clair County, Oct. 15, 2009).

An evidentiary hearing was conducted on December 18, 2009. Petitioner's counsel, David Black, testified that there had been plea discussions prior to trial, in which Petitioner was offered the same plea agreement that he eventually accepted. The parties in their pre-trial plea negotiations had calculated Petitioner's guidelines' range at eleven

---

[3] *See People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973).

to seventeen or twenty years.  The prosecutor indicated during these discussions that she would not seek to go above that range.  Defense counsel advised Petitioner to accept the plea but Petitioner indicated that he wanted to go to trial. (12/18/2009 Tr. at 4-9.)

According to Mr. Black, Petitioner asked him to approach the prosecutor during the trial to see if the plea bargain offer was still on the table.  Mr. Black testified that the initial indication was that the judge would not consider a plea in the middle of trial, but then learned that the judge might consider a guilty plea, but that Petitioner needed to make a quick decision – in approximately five minutes – because the prosecutor had just rested its case.  (*Id.* at 10-13.)  Mr. Black thought it was a good decision for Petitioner to plead guilty.  (*Id.* at 26.)  Mr. Black testified that he calculated the bottom of Petitioner's sentencing guidelines range at eleven or twelve years.  Mr. Black indicated that there were discussions with the prosecutor regarding the guidelines, as well as discussions with the prosecutor about eleven years, but he was unsure if the discussion about eleven years was placed on the record.  (*Id.* at 19.)

Mr. Black admitted explaining to Petitioner that if he was found guilty by the jury that the judge would likely revoke his bond because of the violent nature of the crime charged.  However, Mr. Black denied telling Petitioner that he would never see his children again unless he pleaded guilty.  Contrary to Petitioner's allegations, Mr. Black did not recall any discussion with Petitioner regarding his right to withdraw his plea once it was entered. (*Id.* at 15-18.)  Soon after the plea was entered Petitioner told defense counsel he wanted to withdraw his plea.  (*Id.* at 19-20.)  Mr. Black conceded that he had been held in contempt for lying to opposing counsel and the court in the past and he

6

admitted that he had been reprimanded by the Attorney Discipline Board.  (*Id.* at 21-23.)

Mr. Black could not remember telling Petitioner's mother "wouldn't it be better if your

son did 11 years rather than 30."  (*Id.* at 22.)  Black testified that if Petitioner had not

accepted the plea offer, they would have raised a self-defense claim at trial.  (*Id.* at 27.)

Petitioner's mother, Diane Lecea, testified that defense counsel informed her and

her son of a possible plea deal the second day of trial.  Lecea testified that counsel told

Petitioner that the case did not look good and they wanted to offer him a deal of eleven to

twenty two years.  Lecea quoted defense counsel as saying that if Petitioner did not plead

guilty, he would go to jail that day for thirty years and he would not see his kids.

Counsel asked Lecea "wouldn't you rather see him do for 11 rather than 30."  Petitioner's

mother claimed that defense counsel told them that if Petitioner pleaded guilty he could

file a motion to withdraw the plea later.  Lecea felt that her son was confused, scared, and

mixed up when he pleaded guilty, in that all he thought about was "his woman and two

kids." (*Id.* at 33-37.)

Petitioner testified that defense counsel led him to believe the trial went well for

him the first day but that after the police officers testified on the second day his counsel

informed him he had asked the judge if he would accept a guilty plea from Petitioner.

Petitioner testified that defense counsel advised him that there was a plea offer for eleven

to twenty two years and that if he had been the defendant he would take the plea deal.

Petitioner claimed that counsel informed him that he would receive no more than eleven

years on the minimum sentence.  Petitioner testified that counsel advised him that if he

changed his mind any time before sentencing that he could file a motion to withdraw the

plea.  Mr. Black also allegedly warned Petitioner that if he was convicted that day that his bond would be revoked and he would go to prison for thirty years.  Petitioner claimed that he was forced to make a decision within minutes.  Petitioner had told defense counsel from day one that he would not plead guilty.  Petitioner agreed to take the plea deal only after defense counsel guaranteed him that if he pleaded guilty he could go home that day. Petitioner asked Mr. Black to file a motion to withdraw the plea deal within minutes of leaving court.  Defense counsel never advised petitioner that it was almost "impossible" to get a plea withdrawn.  Petitioner claims that he "most definitely" believed a minimum sentence of eleven years was part of the plea although elsewhere he testified that his counsel indicated that the sentence would range from eleven to twenty two years.  (*Id.* at 39-46.)

> After hearing argument from counsel the trial court held as follows:
>
> Thank you very much.  I've previously ruled that Mr. Scott was not entitled to withdraw his guilty plea because it had been offered voluntarily and with full understanding of the consequences.  Nothing that's been presented to me today causes me to reconsider that.  However, I have appointed counsel to review the case, and to pursue any claims for appeal and review that Mr. Scott may be entitled to.  My purpose in granting this hearing was to allow him to develop what record to permit the appeals court to evaluate Mr. Scott's claim of appeal on ineffective assistance of counsel and I accommodated that in this manner. I don't believe that any further action is required by me.  As I indicated before that I believe that the plea was offered voluntarily.  I believe that the decision to offer a plea at the stage of the proceedings occurred was a decision that was made based upon assessments of the risk that would occur had the jury returned a verdict of guilty and the option he had to obtain a more favorable plea offer if the Court was to accept it at that point.  That's a matter of trial strategy.  I believe that's something that is between the attorney and his client and it's not a basis to withdraw the plea or to have a new trial.  And the record is complete now and I believe you can pursue it from this point. I thank you.

(*Id.* at 52-53.)  Petitioner's conviction was affirmed on appeal.  *People v. Scott*, No. 296886 (Mich. Ct. App. April 22, 2010) (*leave denied*, 488 Mich. 911, 789 N.W.2d 474 (2010)).

Petitioner now seeks a writ of habeas corpus on the following ground:

THE TRIAL COURT DENIED PETITIONER DUE PROCESS OF LAW PURSUANT TO US CONST AMS V, XIV, IN REFUSING TO ALLOW PETITIONER THE OPPORTUNITY TO WITHDRAW HIS GUILTY PLEA, BECAUSE PETITIONER WAS DENIED EFFECTIVE REPRESENTATION AT HIS PLEA HEARING, BY VIRTUE OF DEFENSE COUNSEL'S COERCION AND MISREPRESENTATIONS CONCERNING COUNSEL'S CERTAINTY THAT UNLESS PETITIONER PLED GUILTY, HE WOULD GO TO PRISON FOR 30 YEARS, WOULD NOT SEE HIS CHILDREN, WOULD RECEIVE A SPECIFIC SENTENCE, AND THAT HE WOULD BE ABLE TO WITHDRAW HIS PLEA IF HE CHOSE PRIOR TO SENTENCING, THEREBY DENYING HIM DUE PROCESS OF LAW PURSUANT TO U.S. CONST AMS V, VI, XIV.I.

## II.    LEGAL STANDARDS

### A.    Standard of Review

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519-20 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S. Ct. at 1521. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11, 120 S. Ct. at 1522.

The Supreme Court has explained that "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, ---- U.S.----, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, 117 S. Ct. 2059, 2067 n. 7 (1997)); *Woodford v. Viscotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (*per curiam*). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, ---- U.S.----, 131 S.

10

Ct.770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332 n. 5 99 S. Ct. 2781, 2796 n. 5 (1979) (Stevens, J., concurring in judgment)).  Indeed, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24, 123 S. Ct. at 360. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

In the present case, the Michigan Court of Appeals denied petitioner's application for leave to appeal in a form order "for lack of merit in the grounds presented." The Michigan Supreme Court subsequently denied petitioner leave to appeal in a standard form order without any extended discussion. Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, as would warrant federal habeas relief, does not require that there be an opinion from the state court that explains the state court's reasoning. *Harrington,* 131 S. Ct. at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* In fact, when a habeas petitioner has presented a federal claim to a state court and that state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. That presumption may be overcome only when there is a reason to think that some other explanation for the state court's decision is more likely. *Id.* at 785.

In the present case, the AEDPA deferential standard of review applies to petitioner's case where the Michigan Court of Appeals rejected petitioner's appeal "for lack of merit in the grounds presented" and the Michigan Supreme Court subsequently denied leave to appeal in a standard form order, because these orders amounted to a

decision on the merits.  *See Werth v. Bell,* 692 F. 3d 486, 492-94 (6th Cir. 2012);

*Hardaway v. Robinson*, 655 F.3d 445, 447, 449 n.1 (6th Cir. 2011).

**B.     Ineffective Assistance of Counsel Standard**

A defendant seeking to set aside a conviction on the basis of ineffective assistance

of counsel must satisfy a two-prong test.  First, the defendant must demonstrate that,

considering all of the circumstances, counsel's performance was so deficient that the

attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.

*Strickland v. Washington*, 466 U.S. 668, 687,104 S. Ct. 2052, 2064 (1984).  A finding of

deficiency under this prong requires a defendant to overcome the strong presumption that

counsel's performance falls within the wide range of reasonable professional assistance.

*Id.*  Stated differently, a defendant must overcome the presumption that, under the

circumstances, the challenged action might be sound trial strategy.   *Id.* at 689, 104 S. Ct.

at 2065.  If a defendant satisfies the first component of *Strickland*, they must then

demonstrate that the deficient performance prejudiced their defense.  *Id.*  To demonstrate

prejudice, the defendant must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 694, 104 S. Ct. at 2068.  The Supreme Court's holding in *Strickland* places the

burden on the defendant who raises a claim of ineffective assistance of counsel, and not

the state, to show a reasonable probability that the result of the proceeding would have

been different but for counsel's deficient performance.  *See Wong v. Belmontes*, ---- U.S.

----, 130 S. Ct. 383, 390-91 (2009).

When reviewing a claim of ineffective assistance on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"  *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard."  *Harrington*, 131 S. Ct. at 785.

Even on direct review, "[s]urmounting *Strickland*'s high bar is never an easy task." *Harrington*, 131 S. Ct. at. 788 (quoting *Padilla v. Kentucky*, ---- U.S. ----, 130 S. Ct. 1473, 1485 (2010)).  Once a state court has adjudicated an ineffective assistance claim on the merits, surmounting *Strickland*'s high bar becomes more difficult because on habeas review "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939 (2007)); *see also Harrington*, 131 S. Ct. at 785 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard."). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably

14

determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123, 129 S. Ct. at 1420 (citing *Yarborough v,* 541 at 664, 124 S. Ct. at 2149).

Pursuant to § 2254(d)(1), a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* In providing content and meaning to this doubly deferential standard, the Supreme Court has explained that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 131 S. Ct. at 785. Not only must a reviewing court give defense counsel the benefit of the doubt, but on habeas review, a court must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* ----U.S. ----; 131 S. Ct. 1388, 1407 (2011). The Court is aware that "reliance on 'the harsh light of hindsight' to cast doubt" on a case that took place almost four years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington*, 131 S. Ct. at 789.

## C.    Guilty Pleas and Ineffective Assistance of Counsel

Petitioner claims that the Michigan trial judge should have permitted the withdrawal of his guilty plea because his trial counsel was ineffective in advising petitioner to plead guilty. Given the interest in finality, however, guilty pleas are not easily retracted. "Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function." *Premo v. Moore,* ---- U.S. ----*;* 131 S. Ct. 733, 741 (2011). The principles on which the structure of plea bargaining

15

rely "are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place." *Id.*

Assessing counsel's performance in the context of a guilty plea is no simple task as "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Id.* The opportunities[] include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome []at trial[.]" *Id.* The risks associated with negotiating plea agreements include the "obvious" risk of "losing the chance for a defense verdict," as well as entering an agreement before "the prosecution finds its case is getting weaker, not stronger." *Id.*

In light of the aforementioned realities, the Supreme Court has admonished that "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Id.* The Court further explained:

> Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. AEDPA compounds the imperative of judicial caution.

16

> Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect.  *Strickland* allows a defendant "to escape rules of waiver and forfeiture."  Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Id.* at 741-42 (internal citations and quotations omitted).

If a habeas petitioner successfully demonstrates deficient performance – which requires the petitioner to show that the state court's performance determination was such an unreasonable application of Supreme Court precedent that there is no possibility fairminded jurists could disagree on the correctness of that decision, *Harrington*, 131 S. Ct. at 786 – they must still satisfy *Strickland*'s prejudice prong.  To establish prejudice in the guilty plea context, a defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty but would have insisted on going to trial.  *Premo*, 131 S. Ct. at 743 (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370 (1985)).  An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial."  *Hill*, 474 U.S. at 59, 106 S. Ct. at 371.

The Sixth Circuit has interpreted *Hill* in such a fashion so as to require a federal habeas court to analyze the substance of the habeas petitioner's underlying claim or defense.  *See Maples v. Stegall,* 340 F. 3d 433, 440 (6th Cir. 2003).  The petitioner must therefore show a reasonable probability that but for counsel's errors, he would not have

pleaded guilty because there would have been a reasonable chance that he would have been acquitted had he insisted on going through with a trial. *See Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001). This burden may not be satisfied by a petitioner's conclusory allegation that but for an alleged attorney act or omission, he or she would not have pleaded guilty. *Id.* Rather, the test of whether a defendant would have not pleaded guilty if he or she had received different advice from counsel "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla*, 130 S. Ct. at 1485).

### III.   APPLICATION

**A.   Petitioner's Ineffective Assistance Claim**

Petitioner provides several grounds in support of his position that the state court erroneously denied his motion to withdraw his guilty plea. First, Petitioner contends that his trial counsel misrepresented material facts about the terms and consequences of entering the plea agreement. Specifically, Petitioner alleges that his counsel indicated that he would receive a minimum sentence of no more than eleven years and that his counsel promised that he could withdraw the plea prior to sentencing. Petitioner's misrepresentation argument, however, does not carry the day.

Absent extraordinary circumstances, or some other explanation as to why a defendant did not reveal other terms when specifically asked to do so by the trial court, a plea agreement consists of the terms revealed in open court, where the trial court

scrupulously follows the required procedure for taking the defendant's plea. *Baker v. United States*, 781 F. 2d 85, 90 (6th Cir. 1986). A state court's proper plea colloquy will cure any misunderstandings that a petitioner may have had about the consequences of the plea. *Ramos v. Rogers*, 170 F. 3d 560, 565 (6th Cir. 1999). Therefore, a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an "extraordinary circumstance" under *Baker* when the court conducts a proper, clear, and thorough plea colloquy. *Id.*

At the plea hearing, the prosecutor placed the plea agreement on the record. The plea agreement did not include any promises regarding sentencing nor did it contain an agreement that Petitioner could withdraw his plea before sentencing. In fact, the state trial judge advised Petitioner that he would be unable to set aside his guilty plea once accepted by the judge. The trial judge also advised Petitioner of the maximum penalties for the crime. The judge asked Petitioner on the record if there were any promises that had been made to induce his plea other than those that had been placed on the record. Petitioner denied that any other promises, threats, or inducements had been made to get him to plead guilty other than the terms of the plea agreement which had been placed on the record. Petitioner would therefore not be entitled to the withdrawal of his plea based on his allegation that his attorney gave him misleading information about his sentence and his ability to later withdraw his guilty plea where the Petitioner was given the correct information at the time of the plea and the Petitioner expressly denied the existence of

other representations or promises at the time of his plea. *See United States v. Todaro*, 982 F. 2d 1025, 1029-30 (6th Cir. 1993).

Petitioner's second argument in support of his claim that the state court erroneously denied his motion to withdraw involves coercion. Petitioner claims that he was coerced into pleading guilty when his counsel threatened him that if he did not plead guilty, he would go to prison for thirty years and would not see his children. This coercion claim is foreclosed by Petitioner's statements, made on the record at the plea hearing, that no threats or coercion influenced his decision to plead.

Petitioner and his mother both testified at the *Ginther* hearing that Petitioner had been coerced; however, bare allegations that Petitioner was coerced into pleading guilty is insufficient to overcome the presumption of verity which attaches to the Petitioner's sworn statements during the plea colloquy, in which he denied that any threats had been used to get him to enter his plea. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 750-51 (E.D. Mich. 2005). Moreover, even if, as Petitioner alleges, counsel advised Petitioner that he could receive thirty years in prison if convicted after a trial, "accurate information regarding the possible ramifications of proceeding to trial cannot be construed as coercive. Rather, it is exactly the kind of accurate information regarding sentencing exposure which the defendant must have in order to make an informed decision about whether to accept a plea offer." *United States v. Green,* 388 F. 3d 918, 923 (6th Cir. 2004).

Petitioner is also not entitled to habeas relief because he has failed to show prejudice, defined as a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading guilty to the one assault with intent to commit murder charge, in exchange for the dismissal of the original three assault charges and the second habitual offender charge. *See Shanks,* 387 F. Supp. 2d at 750.  Although Petitioner claims that he has witnesses who would have provided a defense to the charges, Petitioner has provided no affidavits from these witnesses to this Court nor did he ever present their testimony to the state courts.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  Petitioner has failed to show that he would have been acquitted or have received a lesser sentence had he gone to trial.  Petitioner is thus not entitled to habeas relief on his ineffective assistance claim.

In sum, Petitioner has failed to persuade this Court that the state court's unreasonably applied Supreme Court precedent in adjudicating his ineffective assistance of counsel claim.  As such, the writ of habeas corpus shall not issue.

**B.**     **Certificate of Appealability**

Title 28 U.S.C. § 2253 governs appeals in § 2254 proceedings.  Section 2253(c)(2) states, in pertinent part: "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  *See also Lyons v. Ohio Adult Parole Auth.*, 105 F. 3d 1063, 1073 (6th Cir. 1997).  Furthermore, Federal

Rule Appellate Procedure 22(b) states: "If an appeal is taken by the applicant, the district judge who rendered the judgment shall either issue a certificate of appealability or state the reasons why such a certificate should not issue." *See also Kincade v. Sparkman*, 117 F. 3d 949, 953 (6th Cir. 1997) (holding that Rule 22(b) requires district courts to make the initial determination of appealability). In granting a certificate of appealability, the Court must indicate the specific issue or issues for which the applicant made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(3). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

As explained above, the Court finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. *Steele v. Withrow,* 157 F. Supp. 2d 734, 743 (E.D. Mich. 2001).

### IV.   CONCLUSION AND ORDER

In short, the Court concludes that Petitioner has failed to surmount the doubly deferential standard of review required when a federal habeas court reviews a state court's ineffective assistance determination.

Accordingly,

**IT IS ORDERED** that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**;

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

22

Date: February 6, 2013

                                          <u>s/PATRICK J. DUGGAN</u>
                                          UNITED STATES DISTRICT COURT

Copies to:
**David R. Cripps**
**Bruce H. Edwards**